## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* JOHN DOE and THE STATE OF NEW YORK ex rel. JOHN DOE,<br><br>        Plaintiffs,<br><br>   v.<br><br>STRUCTURED EMPLOYMENT ECONOMIC DEVELOPMENT CORPORATION,<br><br>        Defendant. | **No. 11 Civ. 6425 (AKH)** |
| UNITED STATES OF AMERICA<br><br>        Plaintiff-Intervenor<br><br><br>   v.<br><br><br>STRUCTURED EMPLOYMENT ECONOMIC DEVELOPMENT CORPORATION, ALEX MR. SAAVEDRA, SHOMARI GREENE, ALAN KATZ, TAGEWATEE CHANDARPAUL, SHANDELL SANTIAGO-VELEZ, MITCHELL MCCLINTON, and MONIQUE TARRY,<br><br><br>        Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ALEX SAAVEDRA'S MOTION TO DISMISS THE COMPLAINT IN INTERVENTION OF THE UNITED STATES OF AMERICA

# **TABLE OF CONTENTS**

Table of Authorities ……………………………………………………… i

Preliminary Statement …………………………………………………….. 1

Statement of Facts ……………………………………………………….... 1

Argument ………………………………………………………………… 6

I.     Claims for Relief One through Four Should be Dismissed as to Mr. Saavedra for Failure to Plead Fraud with Necessary Particularity …………………………. 7

II.    The First Claim for Relief should be Dismissed as to Mr. Saavedra Because the Complaint Does Not Allege That He Submitted or Caused to be Submitted a False Claim ……………………………………………………………… 12

III.   The Second Claim for Relief Should be Dismissed as to Mr. Saavedra Because the Complaint Does Not Allege That He Made or Used False Records or Statements to Obtain Payments ……………………………………………………….. 15

IV.   The Third Claim for Relief, Alleging a Conspiracy in Violation of the False Claims Act, Should be Dismissed as to Mr. Saavedra ………………………………… 17

V.    The Remaining Common Law Claims Should be Dismissed as to Mr. Saavedra for Failure to State a Claim Upon Which Relief Can be Granted ………………… 20

      A.  Claim Four – The Common Law Fraud Claim …………………………… 20

      B.  Claim Five – The Unjust Enrichment Claim ……………………………… 20

      C.  Claim Six – The Payment Under Mistake of Fact Claim …………………… 22

VI.   Incorporation by Reference ……………………………………………… 23


Conclusion …………………………………………………….................. 24

# TABLE OF AUTHORITIES

## Cases

*Allianz Risk Transfer v. Paramount Pictures Corp.*, 2010 WL 1253957
(S.D.N.Y. Mar. 31, 2010) .................................................................. 22

*Allison Engine Co., Inc. v. U.S. ex rel. Sanders*, 553 U.S. 662 (2008) ......................... 17, 18

*Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) ................................. 8

*Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1381 (11th Cir. 1997) ................. 9

*Chapman v. Office of Children & Family Servs. of the State of New York*,
423 Fed. Appx. 104 (2d Cir. 2011) ...................................................................... 8

*Czech Beer Importers, Inc. v. C. Haven Imports, LLC* 2005 WL 1490097
(S.D.N.Y. Jun. 23, 2005) ...................................................................... 21

*In re Crude Oil Commodity Litigation*, 2007 WL 1946553
(S.D.N.Y. Jun. 28, 2007) ...................................................................... 10

*DeSilva v. North Shore-Long Island Jewish Health Sys.*, 770 F.Supp.2d 497
(E.D.N.Y. 2011) ...................................................................... 9

*Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir.1982) ......................... 8

*Dunahoo v. Hewlett-Packard Co.*, 2012 WL 178332
(S.D.N.Y. Jan. 20, 2012) ...................................................................... 21

*Gold v. Morrison-Knudsen Co.*, 68 F.3d 1475 (2d Cir.1995) ................................. 8

*Haas v. Gutierrez*, 2008 WL 2566634 (S.D.N.Y. Jun. 26, 2008) ............................. 16

*Haggerty v. Ciarelli & Dempsey*, 374 Fed. Appx. 92 (2d Cir. 2010) ......................... 20

*Holmes v. Allstate Corp.*, 2012 WL 627238 (S.D.N.Y. Jan. 27, 2012) ....................... 9

*IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049 (2d Cir. 1993) .................... 7, 8

*Joan Hansen & Co., Inc. v. Everlast World's Boxing Headquarters Corp.*,
296 A.D.2d 103 (1st Dep't 2002) ...................................................................... 22

*Mazzaro de Abreu v. Bank of America Corp.*, 525 F.Supp.2d 381
(S.D.N.Y. 2007) ...................................................................... 21, 22

*Meisel v. Grunberg*, 651 F. Supp.2d 98, 108 (S.D.N.Y. 2009) ............................. 8

*Rafter v. Bank of America,* 2009 WL 691929 (S.D.N.Y. Mar. 12, 2009) .................... 10

*Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC,* 317 F.Supp.2d 301
(S.D.N.Y.2003) ............................................................................... 21

*Redtail Leasing, Inc. v. Bellezza,* 1997 WL 603496
(S.D.N.Y. Sept. 30, 1997) ................................................................ 21

*Schmidt v. Fleet Bank,* 1998 WL 47827 (S.D.N.Y. Feb. 4, 1998) ..............................9

*In re Stac Elec. Sec. Litig.,* 89 F.3d 1399 (9th Cir.1996) .........................................7

*United States v. Corinthian Colleges,* 655 F.3d 984 (9th Cir. 2011) ........................ 15, 16

*United States v. Huron Consulting Group, Inc.,* 2010 WL 3467054
(S.D.N.Y. Aug. 25, 2010) ................................................................. 18

*United States v. Murphy,* 937 F.2d 1032 (6th Cir. 1991) ........................................ 12

*United States v. Neifert-White Co.,* 390 U.S. 228 (1968) ........................................ 8

*United States ex. rel. Atkinson v. Penn. Shipbuilding Co.,* 2000 WL 1207162
(E.D. Pa. Aug. 24, 2000) .............................................................. 13, 19

*United States ex rel. Blundell v. Dialysis Clinic,* 2011 WL 167246
(N.D.N.Y. Jan. 19, 2011) .............................................................. 12, 13

*United States ex rel. Camillo v. Ancilla Systems, Inc.,* 2005 WL 1669833
(S.D. Ill. Jul. 18, 2005) ................................................................... 12

*United States ex rel. Capella v. Norden Systems, Inc.,* 2000 WL 1336487
(D. Conn. Aug. 24, 2000) ................................................................ 18

*United States ex rel. Carter v. Halliburton Co.,* 2009 WL 90134
(E.D.Va. Jan. 13, 2009) .................................................................. 16

*United States ex rel. DRC, Inc. v. Custer Battles, LLC,* 376 F. Supp. 2d 617
(E.D. Va. 2005) ........................................................................... 19

*United States ex rel. Fago v. M & T Mortgage Corp.,* 518 F. Supp. 2d 108
(D.D.C. 2007) ............................................................................. 19

*United States ex rel. Finney v. Nextwave Telecom, Inc.,* 337 B.R. 479
(S.D.N.Y. 2006) ........................................................................... 16

*United States ex rel Head v. Kane Co.,* 798 F. Supp. 2d 186 (D.D.C. 2011) ................. 20

*United States ex rel. Mikes v. Strauss,* 274 F.3d 687 (2d Cir. 2001) ......................... 17

*United States ex rel. Pacentile v. Wolk*, 1995 WL 20833
(E.D. Pa. Jan. 19, 1995) ................................................................13, 14

*United States ex rel. Shaver v. Lucas Western Corp.*, 237 F. 3d 932
(8th Cir. 2001) ........................................................................ 13

*Varricchio v. County of Nassau*, 702 F. Supp. 2d 40 (E.D.N.Y. 2010) ....................20

**Statutes**

20 U.S.C. § 1094 .................................................................... 15

31 U.S.C.A. § 3729 ...........................................................*passim*

**Rules**

Fed. R. Civ. P. 8(a) ................................................................ 7

Fed. R. Civ. P. 9(b) ...........................................................*passim*

Fed. R. Civ. P. 12(b) ............................................................ 6

**Other Authorities**

2 James Wm. Moore et al., *Moore's Federal Practice,* § 9.03[1][f] ......................... 9

## Preliminary Statement

Defendant Alex Saavedra ("Mr. Saavedra") respectfully submits this Memorandum of Law in support of his motion to dismiss the Complaint in Intervention of the United States of America filed with this Court on May 22, 2012 ("Complaint"). All six of the claims alleged against Mr. Saavedra must be dismissed because they fail to state the requisite elements of the alleged causes of action and fail to plead the alleged fraudulent activity with necessary particularity. The Complaint contains scarce details attributed directly to Mr. Saavedra. Moreover, those few alleged details do not in any way suggest that Mr. Saavedra, who was the director of the workforce centers, was involved in fraudulent or otherwise tortious conduct.

## Statement of Facts

The Complaint alleges in broad strokes six claims against Structured Employment Economic Development Corporation ("SEEDCO") and seven individual defendants. The defendants are: (1) Mr. Saavedra, former Director at SEEDCO; (2) Shomari "Rick" Greene, former Deputy Director at SEEDCO; (3) Alan Katz, former Manager at SEEDCO; (4) Tagewatee Chandarpaul, former director at SEEDCO; (5) Shandell Santiago-Velez, former Director and Deputy Director at SEEDCO; (6) Mitchell McClinton, former Manager at SEEDCO; and (7) Monique Tarry, former Manager at SEEDCO (the "Individual Defendants"). Three of the claims allege violations of the False Claims Act, 31 U.S.C. § 3729, to wit: (1) causing false claims to be presented for payment; (2) use of false statements; and (3) conspiracy to violate the False Claims Act. The Complaint also alleges three additional common law claims – (1) Fraud; (2) Unjust Enrichment; and (3) Payment Under Mistake of Fact.

SEEDCO is a nationwide corporation that receives funding from the government and private sources to promote community economic development, including providing employment

training and job placement assistance, community lending, and small business services. Complaint at ¶ 25.

Recognizing that the determination of a motion to dismiss requires the Court to consider what is contained in the four corners of the Complaint, it is respectfully submitted that it will be helpful for this Court to have brief background information about Mr. Saavedra and his responsibilities as Vice-President of SEEDCO and Director of the Upper Manhattan Workforce center and the Bronx Workforce center. Alex Saavedra graduated with a degree in urban planning from Stanford University in California. He earned his Master's degree in Urban Planning from Columbia University in New York. Mr. Saavedra worked in urban planning on a fellowship, writing grant proposals for commercial and business revitalization in economically depressed areas in New York State.

Mr. Saavedra began working at SEEDCO in July 2001 as a senior program associate in the Workforce Development Department at SEEDCO's corporate offices. He was hired to write grant proposals for programs which would help people move from welfare to self-sufficiency. One example of a grant was for a match savings program which would contribute two dollars for every one dollar saved by a participant from his or her paycheck.

In 2004 the Upper Manhattan Workforce Center was opened pursuant to a contract between SEEDCO and New York City's Division of Small Business Services ("SBS"). Complaint at ¶25. Mr. Saavedra drafted part of the successful proposal for SEEDCO to obtain the Upper Manhattan Workforce Center contract with SBS. The President and CEO of SEEDCO selected Mr. Saavedra as Director of the center because of his qualifications and his pre-existing relationships with the businesses and schools in the community. His work at the Upper Manhattan Workforce Center was primarily externally focused. Mr. Saavedra worked on job

development by engaging employers in the community, working with the community colleges, and with the Upper Manhattan Empowerment Zone and other community institutions with which he had developed a working relationship. He also met with SBS members at SEEDCO headquarters and he had weekly meetings with the SEEDCO Board. *See id.* at ¶ 34. Mr. Saavedra also designed programs to assist veterans and fathers who were seeking work. Mr. Saavedra's responsibilities did not include supervising intake activity at the Workforce Center.

When, in 2011, SEEDCO was awarded the contract to open a workforce center in the Bronx, Mr. Saavedra was asked to be the Director there because of the quality of his work at the Upper Manhattan Center. In 2011 he became the director of the Bronx Workforce Center. Since 2004, Mr. Saavedra was also a Vice President of SEEDCO.

SBS is responsible for administering the Workforce Center services. The function of the Workforce Centers is to assist adults and dislocated workers in finding jobs and to assist welfare recipients to become self-sufficient. *Id.* at ¶ 24. Workforce Career Centers provide programs to help people find jobs, retain employment and advance in their jobs to increase their income. *Id.* at ¶ 25. The Workforce Centers hold training programs, workshops on preparing resumes and interview preparation in addition to community outreach programs and it works with community colleges to enroll people in courses which will lead to employment.

When a job candidate first meets with a Workforce employee, whether on site or at a recruitment event, the candidate fills out an intake form called a Customer Information Form ("CIF"). *Id.* The intake department staff members enter the CIF data provided by the candidates into the WorkSource 1 system. *Id.* The Worksource 1 system automatically transmits the CIF data to the New York State Department of Labor's reporting system and the CIF information is further relayed to the United States. *Id* at ¶ 29. There was a hierarchy of intake which consisted

3

of an intake team and an intake coordinator. The Strategic Operations Coordinator ("SOC") supervised the team. and the intake coordinator.

In the Complaint's Preliminary Statement (*id.* at ¶¶ 1–4), and in the section entitled "Defendants' Fraudulent Scheme to Report False Job Placements," (*id.* at ¶¶ 32–52, 61–71), the government makes a number of generalized non-specific allegations against all Defendants and some specific clams against Individual Defendants.

The generalized allegations are that: (1) SEEDCO and "certain of the Individual Defendants" instructed SEEDCO employees to have family and friends fill out intake forms so that their family members' employment could be falsely reported as SEEDCO placements (*id.* at ¶¶ 2, 64); (2) "Defendants" failed to train staff members on the accurate reporting of job placements (*id.* at ¶ 32); (3) "Defendants" reported false placements to create the appearance that SEEDCO was achieving contractual target placement goals (*id.* at ¶ 36); (4) SEEDCO and "its [unidentified] managers" disguised false reports to prevent discovery by a third party data verification company; unidentified "SEEDCO managers" discussed their belief that when verifiers called the placed individuals, they asked only whether the individual was working, not when the individual started in the position, thus allowing SEEDCO to falsify job placement information using candidates' current employment without being caught (*id.* at ¶ 49); (5) because unidentified "SEEDCO managers" expressed the belief that the verification process would not reject a claimed placement where the telephone number provided for the candidate was incorrect or out of service, the unidentified managers instructed staff to submit false contact information in connection with false placements (*id.* at ¶ 50); (6) "Defendants'" concealment of the fraud involved their manipulation of the total number of job placements SEEDCO reported quarterly (*id.* at ¶ 51); (7) unidentified "SEEDCO managers" directed employees who dealt with

4

SEEDCO's business partners to use their relationships to generate false placements, i.e., having the businesses' current employees fill out CIFs, which were recorded as job placements (*id.* at ¶ 62); and (8) unidentified "SEEDCO managers" instructed Operations Assistants to pull resumes from job search websites and report the employment of individuals from those resumes as job placements, focusing on individuals who had worked at a business with which SEEDCO had an actively-managed account (*id.* at ¶ 63).

The allegations of conduct by Mr. Saavedra are that: (1) Defendants Mr. Saavedra, Greene, Katz, McClinton, Chandarpaul, Santiago-Velez, and Tarry, provided (unidentified) instructions to clerical staff members to enter as job placements a job candidate's current or prior employment obtained before any involvement with SEEDCO, despite knowing that the job was not obtained through SEEDCO (*id.* at ¶ 1); (2) Defendants Mr. Saavedra, Greene, and Chandarpaul led staff meetings at the Upper Manhattan center and told staff members, "in sum and substance," that if placement targets were not met, "no one will have a job," (*id.* at ¶ 35); (3) the instruction to record and report a job candidate's work history as a SEEDCO placement occurred during staff meetings which were led or attended by Mr. Saavedra (*id.* at ¶ 38); (4) Katz and Mr. Saavedra sent unidentified center-wide emails instructing staff members to falsify "indirect placements" based upon a job candidate's current or prior employment (*id.* at ¶ 42); (5) on January 19, 2011 a clerical employee wrote that "if you come across any customers who are employed, please capture their placement information and bring it over to me. We are currently at 164 placements, we need to be at 441 placements by the end of the month to achieve a green light for January. Due to all our hard work, we spent the entire 2010 in green." Mr. Saavedra replied to that email stating, "I would like to emphasize that it is important to be at par with the rest of the system. We are also digging in here in the Bronx to capture as many placements as

possible," (*id.* at ¶ 44); (6) in approximately March 2011, a new document retention policy required SEEDCO to retain the CIFs rather than shredding them. On April 7, 2011, Chandarpaul forwarded an e-mail containing a placement status report to Katz and a subordinate, with a copy to Mr. Saavedra, asking "what is our plan for this week to ensure we do not get a red light? We are behind everyone." (*id. at* ¶ 47); (7) When initially advised of the allegations of false reporting, SEEDCO created a task force to conduct an internal investigation which Mr. Saavedra and Greene led (*id.* at ¶ 66); and (8) In a Fall 2011 meeting with McClinton and Santiago-Velez regarding the allegations of false placements reported in the *New York Times*, Mr. Saavedra relayed the SEEDCO Board's support for the managers expressed at a meeting which occurred earlier that day. At that same meeting, Mr. Saavedra allegedly discussed SEEDCO's inability to fire another staff member who was "'intimating that she's got dirt. And if she leaves, she's gonna spill it ... [,]'" and expressed his belief that "the employee was reporting or would report that "'everybody knows that there were certain practices at those centers ... ' Whether it's right, wrong or indifferent, she's gonna [expletive] us,'" (*id. at* ¶ 69).

For all of the reasons set forth herein, it is respectfully requested that the Court dismiss the Complaint as to Mr. Saavedra for failure to state a claim pursuant to Fed R. Civ. P. 12(b)(6) and for failure to adequately particularize the allegations pursuant to Fed. R. Civ. P. 9(b).

### Argument

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In applying this standard of facial plausibility, the Court should not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Harris v. Mills,* 572 F.3d 66, 71-72 (2d Cir. 2009). Thus, a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *See Twombly*, 550 U.S. at 555. As discussed in more detail *infra* in POINT ONE when a litigant alleges fraud, Rule of Civil Procedure 9(b) requires that "the circumstances constituting fraud . . . shall be stated with particularity," Fed.R.Civ.P. 9(b), which this Complaint fails to do.

## POINT ONE

### Claims for Relief One through Four Should be Dismissed
### for Failure to Plead Fraud with Necessary Particularity

The Federal Rules of Civil Procedure create a system of pleading whereby the particularity with which a litigant must state claims varies with the substance of the assertions. As a general matter, pleadings setting forth one or more claims must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P.8(a). However, when a litigant alleges fraud, Rule of Civil Procedure 9(b) requires that "the circumstances constituting fraud . . . shall be stated with particularity." Fed.R.Civ.P. 9(b). Rule 9(b) serves not only to give notice to defendants of the specific fraudulent conduct against which they must defend, but also "'to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.'" *In re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir.1996) *quoting Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.1985). As the Second Circuit explained in *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir. 1993):

> The specificity required by Rule 9(b) is distinct from Rule 8(a)'s liberal 'plain statement' rule. This distinction serves several purposes, [including] "to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based," *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir.1990) (citations omitted); *see*

*also O'Brien v. National Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir.1991) [and] "[to] safeguard[ ] defendant's reputation and goodwill from improvident charges of wrongdoing[.]" *Ross v. Bolton*, 904 F.2d at 823 (citations omitted); *see also O'Brien*, 936 F.2d at 676.

Simply put, "'conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough.'" *Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 114 (2d Cir.1982) (*quoting Segal v. Gordon*, 467 F.2d 602, 606-08 (2d Cir. 1972).

The False Claims Act is an anti-fraud statute. *See* 31 U.S.C. § 3729(a) (using language such as "false or fraudulent," "conspires to defraud," and "intending to defraud"); *see also United States v. Neifert-White Co.*, 390 U.S. 228, 233 (1968) (the False Claims Act "protect[s] the funds and property of the Government from fraudulent claims") (internal quotation marks omitted); *Chapman v. Office of Children & Family Servs. of the State of New York*, 423 Fed. Appx. 104, 105 (2d Cir. 2011) ("Moreover, the False Claims Act is an antifraud statute[.]") As such, complaints brought under the False Claims Act must fulfill the requirements of Rule 9(b) - defendants accused of defrauding the federal government have the same protections as defendants sued for fraud in other contexts. *See Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) (collecting cases). The Second Circuit has squarely rejected the argument that Rule 9(b) does not apply to the False Claims Act, finding it self-evident that the False Claims Act is an anti-fraud statute and noting "[n]ot surprisingly, then, courts routinely require F[alse] C[laims] A[ct] claims to comply with Rule 9(b)." *Gold v. Morrison-Knudsen Co.*, 68 F.3d 1475, 1476 (2d Cir.1995) (collecting cases). As with causes of action pursuant to the False Claims Act, a claim pled under the common law theory of fraud must comply with Rule 9(b). *Meisel v. Grunberg,* 651 F. Supp.2d 98, 108 (S.D.N.Y. 2009).

Additionally, "[i]n cases with multiple defendants," like the instant action, "Rule 9(b) requires that the complaint allege facts that specify each defendant's connection to the fraud.

General allegations against a group of defendants are insufficient." *Schmidt v. Fleet Bank*, 1998

WL 47827, at *5 (S.D.N.Y. Feb. 4, 1998) *citing Mills v. Polar Molecular Corp.*, 12 F.3d 1170,

1175 (2d Cir.1993); *see also* 2 James Wm. Moore et al., *Moore's Federal Practice* § 9.03[1][f]

at 9-25 (3d ed. 2009) (collecting cases).   As the Court explained in a recent decision:

> Rule 9(b) requires plaintiffs to "connect the allegations of fraud to each individual
> defendant." *Trustees of Plumbers and Pipefitters Nat. Pension Fund v. De–Con
> Mechanical Contractors, Inc.*, 896 F.Supp. 342, 347 (S.D.N.Y.1995); *see also
> Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993) ("Rule 9(b) is
> not satisfied where the complaint vaguely attributes the alleged fraudulent
> statements to 'defendants.'"). Plaintiffs alleging fraud "may not rely on sweeping
> references to acts by all or some of the defendants because each named defendant
> is entitled to be apprised of the facts surrounding the alleged fraud." *Trustees of
> Plumbers and Pipefitters Nat. Pension Fund*, 896 F.Supp. at 347.

*Holmes v. Allstate Corp.*, 2012 WL 627238, at *23 (S.D.N.Y. Jan. 27, 2012).

"Because fair notice is perhaps the most basic consideration underlying Rule 9(b), the

plaintiff who pleads fraud must reasonably notify the defendants of their purported role in the

scheme." *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1381 (11th Cir. 1997) *quoting*

*Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (internal

citations and quotations omitted).   As such, "in a case involving multiple defendants ... 'the

complaint should inform each defendant of the nature of his alleged participation in the fraud.'"

*Id.*   "Courts have . . . found that complaints have failed to satisfy the particularity requirements

of Rule 9(b) where . . . they only vaguely attribute[d] the alleged fraudulent statements to

'defendants.'" *DeSilva v. North Shore-Long Island Jewish Health Sys.*, 770 F.Supp.2d 497, 527

(E.D.N.Y. 2011) (*quoting Mills v. Polar Molecular Corp.*, 12 F.3d at 1175–76).   "[W]hen a fraud

claim is made against multiple defendants, ... a plaintiff is obligated to state, with particularity,

the acts [and] omissions complained of by each defendant. General allegations made against

multiple defendants do not satisfy the pleading requirements of [Rule] 9(b)." *Rafter v. Bank of*

*America,* 2009 WL 691929, at *12 (S.D.N.Y. Mar. 12, 2009) (internal quotations omitted). "'[L]umping' all defendants together fails to satisfy the particularity requirement." *In re Crude Oil Commodity Litigation,* 2007 WL 1946553, at *6 (S.D.N.Y. Jun. 28, 2007) (*quoting Simon v. Castello,* 172 F.R.D. 103, 105 (S.D.N.Y. 2007).

The Complaint's fraud allegations as to Mr. Saavedra fail to provide him with even the most minimally sufficient notice of the alleged fraudulent conduct and as such should be dismissed. The majority of the allegations which attempt to implicate Mr. Saavedra do not even name him and are merely general descriptions of conduct by "managers," "defendants," or "the Individual Defendants." *See* pp. 3 - 4, *supra, citing* Complaint at ¶¶ 1-2, 32, 36-37, 49-51, 62-64. These allegations impermissibly lump Mr. Saavedra with other defendants and do not provide him with legally sufficient notice of the alleged fraudulent conduct, much less properly specify the fraudulent conduct in which Mr. Saavedra is alleged to have engaged.

While there are several allegations which specifically name Mr. Saavedra, those fail to allege with proper specificity the factual elements of the fraud claims. These accumulated defects include:

- No details are provided concerning the clerical staff that Mr. Saavedra supposedly directed to enter incorrect or false job placements; no allegations are made as to when these instructions were allegedly given, what if any were Mr. Saavedra's actual alleged instructions, or the individuals about whom false or incorrect information was entered (*see id.* at ¶¶ 32, 36 - 39).

- No details are provided about the staff meetings where allegedly Mr. Saavedra and others communicated, "in sum and substance," that SEEDCO employees' jobs were at stake unless targets were met. (*See id.* at ¶ 35). First, this is *de riguer* language of corporate life in all industries and is not in any manner a statement indicating fraud. Secondly, no specific allegation is made connecting this non-specific sum and substance message to any false or fraudulent action by Mr. Saavedra nor is there an allegation that this message was intended to be or understood by anyone to be a direction to commit acts of fraud.

- No specific details are provided about the content of the center-wide emails Mr. Saavedra sent allegedly instructing staff members to falsify "indirect placements." (*See id.* at ¶42). This paragraph of the Complaint is the most specific allegation against Mr. Saavedra, yet it fails to allege with any specificity the content of the supposedly improper emails directing staff to falsify indirect placements, when such emails were sent, or to whom.

- The Complaint cites to Mr. Saavedra's response to a January 19, 2011 email, in which he encourages employees to work hard, to wit, "I would like to emphasize that it is important to be at par with the rest of the system. We are also digging in here in the Bronx to capture as many placements as possible." (*See id.* at ¶ 44). In no manner does this email response constitute a direction to commit fraud.

- The Complaint states that Mr. Saavedra was copied on an April 7, 2011 email in which the question was posed "what is our plan for this week to ensure we do not get a red light? We are behind everyone." (*See id.* at ¶47). The Complaint does not allege that Mr. Saavedra received, nor read the email, replied to the email or was involved in any other manner in the conversation.

- The Complaint alleges that at a Fall 2011 meeting held after the publication of a *New York Times* article, Mr. Saavedra told others that he had met with the SEEDCO Board and that the Board supported the Workforce managers and that the Board's attitude was that "[expletive] happens." (*Id.* at ¶69). Mr. Saavedra also allegedly said at this meeting that an employee claimed she has "dirt" and if fired, she would "spill it" and that he understood that the employee would claim that "everybody knows that there were certain practices at those centers...' Whether it's right, wrong or indifferent, she's gonna [expletive] us." (*Id.* at ¶69). Once again, there is nothing in this paragraph that alleges (much less with specificity), as against Mr. Saavedra, his direction or commission of fraudulent acts. In this paragraph 69, Mr. Saavedra is doing nothing more than colloquially reporting the claims and actions of others, namely, the Board and an unidentified employee who is threatening to make claims if fired.

In short, the allegations against Mr. Saavedra are sparse and those facts alleged fail to support, within the meaning of Rule 9(b), the necessary detailed allegations of fraud against Mr. Saavedra. The Complaint's numerous group pleadings and paragraphs which do not mention Mr. Saavedra (*see* Complaint at ¶¶ 32, 36, 37, 38, 39, 40, 41, 43, 45-51, 53-65, 67, 68 and 70) are not a substitute for specific, detailed allegations of fraudulent conduct that plaintiff must allege against Mr. Saavedra in order to sustain this Complaint. Accordingly, claims One through Four of the Complaint should be dismissed.

## POINT TWO

### The First Claim for Relief should be Dismissed as to
### Mr. Saavedra Because the Complaint Does Not Allege
### That He Submitted or Caused to be Submitted a False Claim

Pursuant to 31 U.S.C.A. § 3729(a)(1)(A), "any person who. . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" is liable to the government for a violation of the False Claims Act.  Thus, two elements must be pled with sufficient factual development as against Mr. Saavedra – that he had knowledge of a false statement, and that he presented the false statement for payment or approval.  Federal courts interpreting this section have dismissed claims where, as here, insufficient facts are pled which do not show that a defendant was involved in the actual presentation of the purportedly false claims. The instant Complaint fails to properly allege these claims.

"Knowledge, ratification and creating the procedures do not state a claim upon which relief can be granted as a matter of law under the F[alse] C[laims] A[ct].  To be liable under the F[alse] C[laims] A[ct], a defendant must not only have known of a claim that is false, but defendant must have submitted or caused to be submitted a claim that is false or fraudulent." *United States ex rel. Camillo v. Ancilla Sys., Inc.,* 2005 WL 1669833, at *3 (S.D. Ill. Jul. 18, 2005).  "Constructive knowledge that something illegal may have been in the offing is not enough to prove the government's case [and] does not eliminate the need . . . for some action by the defendant whereby the claim is presented or caused to be presented." *United States v. Murphy,* 937 F.2d 1032, 1038-39 (6th Cir. 1991).  Vague generalized statements are insufficient; the complaint must identify, with particularity, the actual false claims submitted by the defendant. *See United States ex rel. Blundell v. Dialysis Clinic,* 2011 WL 167246, at *10 - *12 (N.D.N.Y. Jan. 19, 2011).

In *United States ex rel. Shaver v. Lucas Western Corp.*, 237 F. 3d 932, 933 (8th Cir. 2001) (*citing* 31 U.S.C. § 3729(a)(1)(A)), the Eight Circuit affirmed a district court's dismissal of the claim that the defendant "knowingly present[ed], or cause[d] to be presented" to the government "a false or fraudulent claim for payment or approval." That Court noted that there were no allegations that the defendant affirmatively instructed the relator to submit the medical bill claims to the government. The Court found that "[e]ven assuming the truth" of the allegation that the defendant knew that the relator "would submit such bills to Medicare," the defendant "cannot be said to have 'caused' [relator's] medical bill claims to be submitted to the government." *Id.*

In *United States ex. rel. Atkinson v. Penn. Shipbuilding Co.*, 2000 WL 1207162, at *14 (E.D. Pa. Aug. 24, 2000), the court found that the complaint had failed to state a claim that defendant Sun Ship had caused the submission of false claims. A company with which Sun Ship did business, Penn Ship, submitted financial statements to the Navy in order to get approval for ship-building contracts. *Id.* at *2 - *3. The complaint alleged that Sun Ship's release of Penn Ship from restrictive covenants in their contract allowed Penn Ship to invest in a third "failing, and imminently bankrupt" company. *Id.* at *13 - *14. Penn Ship had not revealed certain of its financial obligations to the "failing and imminently bankrupt" company in the financial statements it provided to the Navy. *Id.* at *12. The court noted that while "the plaintiff may have alleged that Sun Ship caused some of the circumstances that led to the submission of false claims, the plaintiff has not pleaded with adequate specificity any allegations that Sun Ship caused the submission of false claims." *Id.*

In *United States ex rel. Pacentile v. Wolk*, 1995 WL 20833 (E.D. Pa. Jan. 19, 1995), the government brought a suit pursuant to the False Claims Act against a company and two

13

individual owner/officers, alleging submission of false Medicare claims. According to the government, one individual defendant directed the submission of false claims and the destruction of documentation. The second individual defendant was alleged to have known about and benefitted financially from the fraud and did nothing to stop it. The court held that the government's claim against the second defendant failed as a matter of law: "mere inaction is not enough to constitute a violation of the False Claims Act. The government's argument that [the non-participant defendant] was aware of the fraud does not eliminate the need for some action by the defendant whereby the claim is presented or caused to be presented." *Id.* at *4.

For the reasons discussed in POINT ONE, the allegations which specifically discuss Mr. Saavedra do not make out any fraud claim, much less one pled with the requisite particularity. Additionally, those allegations do not provide any facts showing that Mr. Saavedra presented or caused to be presented a false or fraudulent claim for payment. The cases discussed in this point demonstrate that a complaint must allege actual direct connection between the defendant and the submission of a specific claim. There is no allegation that Mr. Saavedra either submitted or caused someone else to submit a specific false claim for payment. Moreover, there is no allegation in the Complaint that Mr. Saavedra's role and responsibilities at SEEDCO encompassed claims submission. The fact that Mr. Saavedra was assigned to the task force designated to create a corrective action plan (*see* Complaint at ¶ 66), after SEEDCO's whistleblower reported fraudulent practices to SEEDCO management, is flatly insufficient to establish a claim pursuant to 31 U.S.C.A. § 3729(a)(1)(A). The First Claim should be dismissed as to Mr. Saavedra because the Complaint does not properly allege that Mr. Saavedra submitted a false or fraudulent claim or caused such a claim to be submitted for payment to the government.

**The Second Claim for Relief Should be Dismissed as to
Mr. Saavedra Because the Complaint Does Not Allege
That He Made or Used False Records or Statements to Obtain Payments**

Pursuant to 31 U.S.C.A. § 3729(a)(1)(B), "any person who… knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim" is liable to the government for a violation of the False Claims Act. Because the Complaint does not properly allege facts showing that Mr. Saavedra made or used false statements to obtain payments, the Second Claim for relief should be dismissed.

Simply having an oversight role at a company which is alleged to have relied on false claims is not enough to make out a claim pursuant to 31 U.S.C.A. § 3729(a)(1)(B). For example, in *United States v. Corinthian Colleges*, 655 F.3d 984, 997-98 (9th Cir. 2011), the Individual Defendants were members of the board of directors of Corinthian Colleges. Corinthian Colleges was charged with violating the False Claims Act. While Title IV of the Higher Education Act ("HEA"), 20 U.S.C. § 1094, pursuant to which Corinthian Colleges received funding, did not allow for the school's recruiters to receive performance-based bonuses related to the number of students recruited, Corinthian Colleges recruiters received such bonuses. *Id.* at 989-90. Corinthian Colleges nonetheless certified that it was in compliance with the HEA's recruiter compensation policies. *Id.* at 992. As to the Individual Defendants, the government's complaint only asserted that "the individuals monitored Corinthian's recruiter compensation practices." *Id.* at 998. The Court found that the government's complaint alleging a violation of 31 U.S.C.A. § 3729(a)(1)(B) was deficient because it "fails to allege that the Individual Defendants had any role in making a false statement to the United States government." *Id.* The complaint was also insufficient as to this count because, while a claim under § 3729(a)(1)(B) can be based on a false

certification, it did not allege "that the Individual Defendants participated in certifying HEA compliance to the DOE for the purpose of receiving federal funds." *Id.*

Similar to the allegations made here against Mr. Saavedra, in *United States ex rel. Carter v. Halliburton Co.*, 2009 WL 90134, at *5 (E.D.Va. Jan. 13, 2009), the district court found that the complaint failed to "meet the requirements of Rule 9(b)" because there was "no mention of 'the time, place, and contents of' Defendants' use of false statements or records, or of how those statements or records led to the Government's payment of money to Defendants." *Id. citing Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (emphasis added). Defendants were hired to provide water treatment services to the United States Army overseas. The vague allegation that Defendants billed the Government as though they complied with water-testing requirements, when there was evidence they had not, did not adequately plead the use of a false or fraudulent statement. *Id.* at *5.

Where, as here, no false statement or false claim has been attributed to a defendant, the Southern District of New York has dismissed the claims pursuant to § 3729(a)(1)(B) and similar provisions of the False Claims Act. *See, e.g. United States ex rel. Finney v. Nextwave Telecom, Inc.*, 337 B.R. 479, 487-88 (S.D.N.Y. 2006) (In dismissing 31 U.S.C.A. § 3729(a)(1)(B) claim, noting that the complaint "fails to identify a single false statement made by defendants at any time," and the failure "to allege any direct false claim submitted by defendants."); *Haas v. Gutierrez*, 2008 WL 2566634, at *5 (S.D.N.Y. Jun. 26, 2008) (Dismissing counts under a related section of the False Claims Act which also required false statements (but instead in connection with avoiding an obligation to pay the government), when the complaint did not "identify any specific false record or statement that a defendant made"). Additionally, the Complaint has not alleged any certification, express or implied, by Mr. Saavedra in connection with a claim for

payment, sufficient to sustain a False Claims Act § 3729(a)(1)(B) claim. *See United States ex rel. Mikes v. Strauss,* 274 F.3d 687, 697-98 (2d Cir. 2001).

As shown in detail in POINT ONE, *supra,* the Complaint fails to allege detailed facts showing that Mr. Saavedra created, uttered or used any false statement or caused anyone else to do so in connection with SEEDCO's claims for receipt of government funding. Accordingly, the Second Claim, alleging a violation of the False Claims Act, should be dismissed as to Mr. Saavedra.

## POINT FOUR

### The Third Claim for Relief, Alleging a Conspiracy in Violation of the False Claims Act, should be Dismissed as to Mr. Saavedra

A conspiracy to commit any of the enumerated violations (including § 3729(a)(1)(A) and (B), discussed above) is also a violation of the False Claims Act. Because there are no facts pled to support the allegation that Mr. Saavedra conspired with anyone to violate the False Claims Act, the Third Claim for relief should be dismissed as to Mr. Saavedra.

The complaint at bar is insufficient to support the claim of conspiracy to violate § 3729 (a)(1)(A) and (a)(1)(B) because there is no showing the Mr. Saavedra agreed with others that false statements be prepared, and used such false statements to obtain payment or approval for a claim submission or that Mr. Saavedra intended that any false statement be material to the government's decision to pay or approve such false claim. Moreover, the government has failed plead any facts to support its claim that Mr. Saavedra was a conspirator and that he agreed with another conspirator to make use of any false statement to achieve such a result. In *Allison Engine Co., Inc. v. United States ex rel. Sanders,* 553 U.S. 662, 672-73 (2008), the United States Supreme Court held that there were insufficient facts to sustain a False Claims Act conspiracy count. The Court stated: "it must be shown that the conspirators intended 'to defraud the

Government'"; "it must be shown that the conspirators had the purpose of 'getting' the false record or statement to bring about the Government's payment of a false or fraudulent claim"; and "it must be established that [the conspirators] agreed that the false record or statement would have a material effect on the Government's decision to pay the false or fraudulent claim."

In *United States v. Huron Consulting Group, Inc.*, 2010 WL 3467054, at *3 (S.D.N.Y. Aug. 25, 2010) (Rakoff, J.), the district court dismissed the False Claims Act conspiracy count. Noting the generic nature of the conspiracy allegations ("defendants conspired with unnamed 'others' and 'took substantial steps in furtherance of the conspiracies.'"), the Court found that the allegations "fell far short of establishing the elements of conspiracy[.]" *Id.*

The District of Connecticut, in *United States ex rel. Capella v. Norden Systems, Inc.*, 2000 WL 1336487, at *11 (D. Conn. Aug. 24, 2000) provided this apt summary of the elements of a False Claims Act conspiracy and the shortcomings of the complaint in that case:

> There are three elements to an FCA conspiracy claim: (1) a conspiracy with one or more persons to get a false claim paid by the United States, or to conceal, avoid, or decrease an obligation owed to the government; (2) an act in furtherance of the conspiracy by one of the conspirators; and (3) damages suffered as a result of the false claim. *See* FCA § 3729(3); *Blusal Meats, Inc. v. United States*, 638 F.Supp. 824, 828 (S.D.N.Y.1986), aff'd, 817 F.2d 1007 (2d Cir.1987). ... Relator . . . . fails to provide sufficient facts to plead the first two elements of a conspiracy. The complaint merely alludes to an agreement between Defendants and does not specify the particulars of how and when that alleged conspiracy arose, who entered into it, or what act was committed in furtherance of the conspiracy. Such general allegations of conspiracy do not meet the particularity standards required by Fed.R.Civ.P. 9(b). *See Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York*, 808 F.Supp. 213, 230 (S.D.N.Y.1992) ("General allegations that defendants 'conspired' in an alleged scheme to defraud do not sufficiently attribute fraud to each individual defendant and do not satisfy requirements of pleading fraud with particularity."), aff'd, 99 F.3d 401 (2d Cir.1995).

This Complaint is utterly devoid of any particularized allegations of any conspiratorial actions, conversations or agreements by Mr. Saavedra with anybody. Instead, the Complaint

mentions Mr. Saavedra a handful of times in connection with meetings and emails addressed to employee productivity and efficiency in achieving job placements. There are no facts alleged showing that Mr. Saavedra agreed with anybody to create a false record and for that false record to "have a material effect on the Government's decision to pay a false or fraudulent claim." *See Allison Engine*, 553 U.S. at 672-73. Nor does the Complaint allege facts showing that Mr. Saavedra performed "any act to get a false or fraudulent claim allowed or paid.'" *United States ex rel Atkinson v. Pennsylvania Shipbuilding Co.,* 2000 WL 1207162, at *7.

The Complaint's allegations against Mr. Saavedra do not withstand scrutiny and must be dismissed.

Moreover, the intra-corporate immunity doctrine, which applies to False Claims Act cases, provides that "a corporation cannot conspire with its own officers while the officers are acting in their official capacity." *United States ex rel. DRC, Inc. v. Custer Battles, LLC*, 376 F. Supp. 2d 617, 651 (E.D. Va. 2005), *rev'd on other grounds*, 562 F.3d 295 (4th Cir. 2009). Similarly, a corporation's employees "when acting in the scope of their employment, cannot conspire among themselves." *United States ex rel. Fago v. M & T Mortgage Corp.*, 518 F. Supp. 2d 108, 117 (D.D.C. 2007) (citation omitted). As Judge Bianco in the Eastern District of New York explained, collecting relevant authority from the Second Circuit and its district courts:

> The intra-corporate conspiracy doctrine posits that the officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other. *See, e.g., Farbstein v. Hicksville Pub. Library*, 254 Fed.Appx. 50, 50–51 (2d Cir.2007) (affirming dismissal of conspiracy complaint "at the first step of analysis" because complaint made reference only to employees of same corporation) (*citing Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir.1978)); *Herrmann*, 576 F.2d at 459 ("[T]here is no conspiracy [under Section 1985] if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own ... officers [ ] and employees, each acting within the scope of his employment."); *Rini v. Zwirn*, 886 F. Supp. 270, 292 (E.D.N.Y.1995) ("Intracorporate immunity has also been extended to the context of conspiracies

between a public entity and its employees."); *accord Cameron v. Church*, 253 F.Supp.2d 611, 623 (S.D.N.Y.2003); *Quinn v. Nassau County Police Dep't*, 53 F.Supp.2d 347, 359–60 (E.D.N.Y.1999).

*Varricchio v. County of Nassau*, 702 F. Supp. 2d 40, 62 (E.D.N.Y. 2010).

Mr. Saavedra, an employee of SEEDCO, cannot, by law, be liable for participating in a conspiracy among the individual defendants and SEEDCO. *See United States ex rel Head v. Kane Co.*, 798 F. Supp. 2d 186, 201 (D.D.C. 2011) (granting motion to dismiss False Claims Act conspiracy claims where all defendants were employed by defendants' employer).

For all of these reasons, the Third Claim for relief should be dismissed as to Mr. Saavedra.

## POINT FIVE

### The Remaining Common Law Claims Should be Dismissed as to Mr. Saavedra for Failure to State A Claim Upon Which Relief Can be Granted

#### A. Claim Four – The Common Law Fraud Claim

Count Four, which alleges a cause of action for common law fraud, must be dismissed as to Mr. Saavedra for failure to state a claim. To allege a cause of action for common law fraud, a Complaint must plead: (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff. *See Haggerty v. Ciarelli & Dempsey*, 374 Fed. Appx. 92, 94 (2d Cir. 2010) (citation omitted). For all the reasons set forth above in POINTS ONE to FOUR , the government's common law fraud action must be dismissed as well.

#### B. Claim Five – The Unjust Enrichment Claim

The three elements of a claim for unjust enrichment under New York law are that: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Dunahoo v. Hewlett-Packard Co.*, 2012 WL 178332, at *4

(S.D.N.Y. Jan. 20, 2012) *citing Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir.2006); *Mazzaro de Abreu v. Bank of America Corp.*, 525 F.Supp.2d 381, 397-98 (S.D.N.Y. 2007) (same).

Unjust enrichment under New York law is "an amorphous cause of action" which "falls under the umbrella of quasi-contract, or contract implied in law." *Mazzaro de Abreu v. Bank of America Corp.*, 525 F.Supp.2d at 397-98 *citing Michele Pommier Models, Inc. v. Men Women N.Y. Model Mgmt. Inc.,* 14 F.Supp.2d 331, 338 (S.D.N.Y.1998). Because it is a quasi-contractual remedy, the three elements of an unjust enrichment claim cannot be removed "from the context in which they must be viewed: as an alternative to contract, where a contractual relationship has legally failed." *Czech Beer Importers, Inc. v. C. Haven Imports, LLC* 2005 WL 1490097, at *7 (S.D.N.Y. Jun. 23, 2005) (collecting cases). In *Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC,* 317 F.Supp.2d 301, 333-34 (S.D.N.Y.2003), the Court dismissed unjust-enrichment claims where the plaintiffs failed to allege any contractual or quasi-contractual relationship with the defendants. "[A]n unjust enrichment claim, which is a quasi-contract claim, requires some type of direct dealing or actual, substantive relationship with a defendant." *Redtail Leasing, Inc. v. Bellezza,* 1997 WL 603496, at *8 (S.D.N.Y. Sept. 30, 1997).

"[T]o recover under a theory of quasi-contract, a plaintiff must demonstrate that the services were performed for the defendant resulting in its unjust enrichment." *Mazzaro de Abreu v. Bank of America Corp.*, 525 F.Supp.2d at 397-98 (S.D.N.Y. 2007) *citing Michele Pommier Models, Inc. v. Men Women N.Y. Model Mgmt. Inc.,* 14 F.Supp.2d 331, 338 (S.D.N.Y.1998). As the New York Appellate Division First Department has emphasized, "to recover from a particular defendant" for a claim of unjust enrichment "[i]t is not enough that the defendant received a benefit from the activities of the plaintiff." *Joan Hansen & Co., Inc. v. Everlast*

21

*World's Boxing Headquarters Corp.,* 296 A.D.2d 103, 108 (1st Dep't2002) *citing Armstrong v. I.T.T.S. Corp.,* 10 A.D.2d 711 (1st Dep't 1960).

In *Allianz Risk Transfer v. Paramount Pictures Corp.,* 2010 WL 1253957, at *10 (S.D.N.Y. Mar. 31, 2010), the Southern District of New York dismissed an unjust enrichment cause of action in similar circumstances, when it was pled along with federal statutory and state law fraud claims. Having found no viable causes of action for fraud, the Court noted "it is difficult to imagine, and plaintiffs do not explain, how the elements of an unjust enrichment claim could be met in this case." *Id.* The Court agreed with the plaintiff that "New York occasionally sustained unjust enrichment claims where fraud claims are dismissed" but noted that "in such cases, some underlying fraud must be present." *Id. citing Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP,* 2009 WL 762512 (S.D.N.Y. March 23, 2009). The Court found that "because all underlying fraud claims are to be dismissed, the claim for unjust enrichment must also be dismissed." *Id.*

There are no allegations that Mr. Saavedra had a relationship - contractual, quasi-contractual or otherwise - with the government. Additionally, the same reasons that the fraud claims must be dismissed as to Mr. Saavedra dictate dismissal of the unjust enrichment claim. Nor is it enough that Mr. Saavedra received a salary from SEEDCO. Benefit alone does not make out an unjust enrichment claim as to any one particular defendant.

## C. Claim Six – The Payment Under Mistake of Fact Claim

Fed. R. Civ. P. 9(b) applies not only to causes of action alleging fraud, as discussed above, but also to allegations of "mistake," in which cases "a party must state with particularity the circumstances constituting . . . mistake." The Complaint does not state any details with specificity supporting its allegations that Mr. Saavedra caused or contributed to any "mistake of

fact." Nowhere is there an allegation that Mr. Saavedra provided mistaken information to the government. Nor are there any specific allegations regarding what, if any, portion of any payments had their source in governmental funds which were provided to Mr. Saavedra as a result of a "mistake of fact;" what if any specific amount of money Mr. Saavedra was allegedly paid as a result of a "mistake of fact;" when, if ever, such payments were made as a result of a mistake of fact; and how, if at all, such payments were made as a result of a "mistake of fact." For these reasons, the Sixth Claim for relief should be dismissed.

## POINT SIX

### Incorporation by Reference

Mr. Saavedra incorporates by reference, as if fully set forth in this memorandum, the relevant and applicable legal points and authorities set forth by the other moving defendants, including, but not limited to, Defendant Greene's argument explaining why the instant Complaint should be dismissed with prejudice without leave to amend.

## **CONCLUSION**

For the foregoing reasons, it is respectfully requested that this Court dismiss the Complaint against Defendant Alex Saavedra with prejudice and grant all other relief which this Court deems just and proper.

Dated: New York, New York
      January 14, 2013

Law Offices of Bettina Schein

By: _Bettina Schein_

Bettina Schein
565 Fifth Avenue, 7th Floor
New York, New York 10017
212-880-9417
BettinaScheinlaw@aol.com

Bettina Schein
Matthew McCann
On the Memorandum