**BETTINA SCHEIN**
ATTORNEY AT LAW
565 FIFTH AVENUE, 7TH FL.
NEW YORK, NEW YORK 10017

Alan S. Futerfas             (212) 880-9417            Bettinascheinlaw@aol.com
Of Counsel                (212) 684-5259 fax

September 15, 2014

**Via ECF and Fax**
Honorable Alvin K. Hellerstein
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

        Re: *United States v. Saavedra*   11 Civ. 6425 (AKH)

Dear Judge Hellerstein:

       This letter is respectfully submitted pursuant to Your Honor's Individual Rules of Practice, Rule 2.E, in lieu of a formal motion to compel production of discovery. Defendant Alex Saavedra respectfully requests that the Court order prompt and full compliance with the third party subpoenas served on the New York City Department of Small Business Services ("SBS") and Charney Research LLC ("Charney").

       The document subpoenas served months ago on SBS and Charney seek documents that are directly relevant to Mr. Saavedra's defense to the government's false claims allegations against him. SBS entered into the contracts with SEEDCO by which it administered and oversaw the distribution of the federal funds to SEEDCO and closely monitored the job placement results which SEEDCO reported. Charney is a research company which was engaged by SBS in or about 2006 to verify the job placement data reported to SBS by SEEDCO. In response to subpoenas served on SBS and Charney dated March 25, 2014 and June 4, 2014, respectively, these two entities have only provided very minimal documents despite repeated specific document requests and production time accommodations.

       SBS has acknowledged that its production is far from complete and that it has the documents requested, yet it has failed to provide those documents. With respect to Charney, notwithstanding repeated requests to provide documents responsive to Mr. Saavedra's document requests 1-6, whether electronically stored or in paper form, Charney's counsel recently stated in an email, "my client has advised me that the documents he has were already produced." Charney, which is an ongoing data research company, has neither provided those documents requested nor stated that a search for those documents has been made.

Honorable Alvin K. Hellerstein
September 15, 2014
Page 2

I. **Mr. Saavedra's Position**

**Mr. Saavedra Respectfully Requests that the Court Compel Prompt Production of the Documents Requested by Defendant's Third Party Subpoenas Served upon SBS and Charney Research**

    a. **SBS Production to Date**

In this case, the government alleges that Mr. Saavedra was involved in SEEDCO's submission of false job placement results in order to receive part of certain federal funds allocated to SEEDCO as a vendor operating two Workforce 1 Career Centers located respectively in Upper Manhattan and, from January 1, 2011, in the Bronx. The Amended Complaint alleges the framework pursuant to which SEEDCO and SBS entered into a contract to obtain funding to operate the Workforce 1 Career Centers. *See* Amended Complaint at ¶¶ 14 - 28.

To obtain documents relevant to these allegations, counsel for Mr. Saavedra served SBS with a subpoena for documents on March 25, 2014, nearly six months ago. *See* Exhibit A, SBS Subpoena. The categories of documents sought in that subpoena closely align with the allegations in the Amended Complaint as to SBS's role. In particular, the subpoena seeks: (1) communications including emails between SBS and SEEDCO; (2) documents related to payments made by SBS to SEEDCO; (3) documents related to the DOI investigation of SEEDCO; (4) documents related to meetings between SBS and SEEDCO; (5) communications between SBS and other governmental offices regarding SEEDCO contracts and payments to SEEDCO; and (6) documents related to SBS's engagement of Charney to verify the job placements reported by SEEDCO. *See id.*

Since April 4, 2014, counsel has telephoned and emailed counsel for SBS in an unsuccessful effort to achieve full compliance with the document subpoena. It was not until three months later and many emails and phone calls to Michael Rodriguez, Esq., counsel for SBS, that SBS provided its first and only document production. That production, on July 9, 2014, consisted of a few dozen "monthly management reports" (147 pages) about the Bronx and Upper Manhattan Workforce 1 Career Centers operated by SEEDCO. These reports cover only a small part of the relevant time period sought by the subpoena.

However, SBS has not produced most of the requested documents. Specifically, SBS has not produced: (1) any communications including emails between SBS and SEEDCO, and/or its employees including managers and directors; (2) any communications and/or documents to or from or about Charney and Charney's reports (SBS retained Charney to independently verify SEEDCO job placement results); (3) any documents related to the DOI investigation of SEEDCO; (4) any communications between SBS and other governmental offices regarding SEEDCO; or (5) invoices, reports, and/or spreadsheets prepared by SEEDCO or SBS in connection with SBS payments. These documents and communications are directly relevant to the defense of the allegations in this case.

### b. Charney's Production to Date

In the Amended Complaint, the government explains that the Workforce Investment Act ("WIA") requires the local administrators of the federal program, such as SBS, to monitor and measure the accuracy of the job placement reporting of the vendors with whom it contracts. *See* Amended Complaint at ¶ 55. SBS complied with this requirement by retaining an outside data research and verification firm, Charney Research, to verify the job placements reported by SEEDCO and the entities operating Workforce One centers in other boroughs. *See id.* Charney's verification of SEEDCO's job placement data factored into certain payments by SBS to SEEDCO under the contracts at issue. Charney describes itself as a "private consulting firm, based in New York, which offers a broad range of professional services in opinion polling, market research, communications strategy development, and project evaluation." Charney began this work for SBS in or about 2006.

The government's allegations thus place front and center both the job placements reported by SEEDCO to SBS and Charney's third party verification methodology and results. The subpoena seeks documents that are highly relevant to the government's allegations in this case. Documents requests 1 – 6 are for: (1) communications including emails between SBS and Charney relating to Charney's verification and audit of SEEDCO job placements; (2) documents related to SBS's retention of Charney, including the verification and audit reports and related interim work performed by Charney and any information related to payments to Charney by SBS; (3) phone scripts or other documents related to the actual verification process of SEEDCO job placements; (4) protocols and understandings between Charney and SBS or provided by SBS to Charney which governed Charney's verification process; (5) communications including any contracts related to SBS' retention of Charney from 2006 to 2011; and (6) communications between Charney and any other governmental offices regarding Charney's work for SBS in connection with SEEDCO. *See* Exhibit B, Charney Subpoena.

Charney's production to date is inadequate. In its first response, Charney produced 81 pages of documents on July 2, 2014. These 81 pages consisted of: (1) three quarterly job placement verification and audit reports for one year, out of four years requested by the subpoena (17 pages); (2) a 2005 draft Request for Proposal submitted to SBS (60 pages); and (3) the subpoena received by Charney during the DOI's investigation of SEEDCO with a one page written response from Charney (4 pages). Not a single email or other communication was produced.

Counsel notified Charney's attorney, Jerry Goldfeder, Esq., about Charney's deficient production. The need to receive full production from Charney was one of the reasons undersigned counsel sought an extension of the discovery period in its letter to the Court dated August 5, 2014. After communications with counsel for Charney, additional production was received on August 13, 2014. That production only provided quarterly job placement verification reports for additional quarters of the time period covered by the subpoena. Not a single email, contract, memorandum or other document was ever produced.

The subpoena calls for six categories of documents. Charney Research is an ongoing business which claims to have expertise in "communications strategy development." It is highly unlikely that it does not have any emails, or any of the other requested documents, all of which are kept in the ordinary course of running a business. Presently, Mr. Charney is scheduled to be deposed on October 1, 2014. Counsel respectfully requests that Charney be compelled to produce the subpoenaed documents prior to his deposition.

### c. Argument

It is well-settled that the scope of discovery under a Rule 45 subpoena, like those at issue here, is the same as that permitted under Rule 26. *See Chamberlain v. Farmington Sav. Bank*, 2007 WL 2786421, *1 (D. Conn. Sept. 25, 2007) (*citing* Fed.R.Civ.P. 45 Advisory Committee Notes to 1970 Amendment, for the proposition that "the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules" and 9A Wright & Miller § 2459, at 42, for the proposition that the "scope of discovery through a subpoena is 'exceedingly broad' and incorporates the provisions of Rules 26(b) and 34"); *see also O'Brien v. Barrows*, 2010 WL 4180752, *2 (D. Vt. Oct. 19, 2010) (*citing During v. City Univ. of New York*, 2006 WL 2192843, *3 (S.D.N.Y. Aug.1, 2006) (collecting cases)). The requirement under Rule 26 is that the information sought be relevant; relevance "'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on any issue that is or may be in the case.'" *AP Links, LLC v. Russ*, 299 F.R.D. 7, 11 (E.D.N.Y. 2014) (*quoting Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) and *citing Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir.1992) for the proposition that "the scope of discovery under Rule 26(b) is "very broad"); *see In re Term Commodities Cotton Futures Litig.*, 2013 WL 1907738, *4 (S.D.N.Y. May 8, 2013). "'Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.'" *In re Term Commodities Cotton Futures Litig.*, 2013 WL 1907738, *4 (S.D.N.Y. May 8, 2013) *quoting* Fed.R.Civ.P. 26(b)(1).

The documents called for by the subpoenas to SBS and Charney unquestionably fall within the broad definition of "relevant." Indeed, SBS has specifically acknowledged its obligation to produce the documents requested by the subpoena, while Charney has produced some, but certainly not all responsive documents.

Total failure to respond to a discovery request is not a prerequisite for seeking court intervention. A motion to compel is appropriate when, as here, a party has responded to the discovery request in part, but that response is inadequate. *See, e.g., Charter Practices Int'l, LLC v. Robb*, 2014 WL 273855, *2 (D. Conn. Jan. 23, 2014) ("The motion to compel is granted. The defendant's response is incomplete. The defendant shall separately answer each of the subparts of the interrogatory in a methodical way."); *Sonberg v. Niagara Cnty. Jail Med. Dep't Head*, 2010 WL 7746200, *1, *5 - *8 (W.D.N.Y. July 30, 2010) (noting that "defendants seek an Order compelling plaintiff to answer unanswered or incompletely answered demands (document demands and interrogatories)" and partially granting motion to compel document demands); *City of New York v. Beretta U.S.A. Corp.*, 429 F. Supp. 2d 517, 521 (E.D.N.Y. 2006) ("On October

14, 2004, ATF produced data to the City on compact discs. Because the City concluded that this data was incomplete and did not comply with the terms of the April 20, 2004 subpoena, on February 15, 2005, the City moved to compel ATF to produce the missing data."); *Factor v. Mall Airways, Inc.*, 131 F.R.D. 52, 54 (S.D.N.Y. 1990) ("Defendant moves pursuant to Fed. R. Civ.P. 37(a)(2) and 37(a)(3) for an order compelling plaintiff to comply with outstanding discovery requests and to supplement his incomplete answers to otherwise answered requests"; granting defendant's motion to compel).

### II.  SBS's Position

There is no specific dispute with SBS. SBS has acknowledged that its production to date is incomplete, but has nonetheless failed to produce any documents other than those detailed above. Counsel for SBS has advised undersigned counsel that they are aware of SBS's obligation to comply but that a Court order may be necessary to effectuate the production.

### III.  Charney's Position

Counsel for Charney has stated in response to our email requests, attached hereto, that "my client has advised me that the documents he has have already been produced." *See* Exhibit C.

### Conclusion

Undersigned counsel respectfully submits that it is simply not possible that Charney Research, which had a six-year business relationship with SBS in which it verified job placements every quarter, does not have a single email or contract with SBS, payment information, other written communication with SBS, or any other document in its possession concerning its work for SBS, its verification process, or any other aspect of that relationship. It is for this reason, and those set forth above, that we respectfully request that the Court compel prompt document production from SBS and Charney Research.

We thank the Court for its consideration of this request.

Respectfully yours,

Bettina Schein

cc:  Michael Rodriguez, Esq., counsel for SBS
Jerry Goldfeder, Esq., counsel for Charney
AUSA Ellen Blain, counsel for Plaintiff United States